**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Salvador Pulido-Bernal,

Petitioner

v.

John Mattos, et al.,

Respondents

Case No.: 2:26-cv-02062-JAD-EJY

**Order Denying Habeas Relief**

[ECF No. 1]

Petitioner Salvador Pulido-Bernal is a Mexican citizen who was taken into custody by Immigration and Customs Enforcement (ICE) officials on May 30, 2026. He has been in ICE detention at the Nevada Southern Detention Center in Pahrump, Nevada, since then. Pulido-Bernal seeks a writ of habeas corpus, alleging that his prolonged detention violates his due-process rights. The government responds that he failed to exhaust his administrative remedies and that the immigration judge did not violate his constitutional rights by denying bond.

Because prolonged 8 U.S.C. § 1226(a) detention alone does not violate a detainee's due-process rights, and the record does not show that the immigration judge violated Pulido-Bernal's constitutional rights by denying bond based on his criminal history, I deny his petition.

**Background**

Pulido-Bernal has been detained for more than four months. On June 22, 2026—less than a month after his detention began—he sought a custody-redetermination hearing from an immigration judge (IJ) to decide whether he should be released while his removal proceedings were ongoing.[1] The IJ denied bond.[2] Neither party submitted audio from the hearing, but both

[1] ECF No. 1 at 2.

[2] ECF No. 1-3.

Pulido-Bernal and the government filed his Form I-213.[3] Pulido-Bernal filed the IJ's order, which states that "[t]he respondent has not demonstrated [that] he is not a danger to the community,"[4] and the government filed the IJ's "bond memorandum," which details her reasoning and the precedent she relied upon.[5] The "criminal history" in his Form I-213 shows one drug possession conviction, four DUI convictions, and a May 2026 arrest for domestic violence.[6] Citing various precedential cases, the IJ concluded that despite his length of time in the United States, strong family ties including four U.S. citizen children, and employment as a full-time landscaper, the nature and seriousness of Pulido-Bernal's criminal offenses outweighed his other mitigating factors.[7]

## Discussion

### A. This court has jurisdiction over Pulido-Bernal's claims.

The constitution makes a writ of habeas corpus "available to every individual detained in the United States."[8] That writ permits a person who is in custody to challenge the legality of his detention, and the court has the authority to release a petitioner if it determines that he is illegally detained. The court's habeas jurisdiction encompasses a noncitizen's challenge to his detention under United States immigration laws.[9]

---

[3] *See* ECF No. 1-2; ECF No. 6-1 at 6–8.

[4] ECF No. 1-3.

[5] ECF No. 6 at 11–12.

[6] ECF No. 1-2 at 3–4.

[7] ECF No. 6 at 12.

[8] *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. 1, § 9, cl. 2).

[9] *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

**B. Prolonged detention alone does not violate due process.**

"The Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings."[10] But the amount of process due to noncitizens "must account for the government's countervailing interests in immigration enforcement—considerations that do not apply to U.S. citizens."[11] The Ninth Circuit applies the three-factor test outlined in the Supreme Court case of *Mathews v. Eldridge*[12] to determine whether a noncitizen's procedural due-process rights have been violated in immigration-detention situations like this one.[13] Under *Mathews*, courts must consider "*first*, the private interest that will be affected by the official action; *second*, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and *finally*, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[14]

***1. The deprivation of Pulido-Bernal's liberty interest does not weigh in favor of relief.***

"An individual's private interest in freedom from prolonged detention is unquestionably substantial."[15] Pulido-Bernal has been detained for approximately four months. Under Ninth

---

[10] *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1205 (9th Cir. 2022) (quoting *Hussain v. Rosen*, 985 F.3d 634, 642 (9th Cir. 2021)).

[11] *Id.* at 1206.

[12] *Mathews v. Eldridge*, 424 U.S. 319 (1976).

[13] *Rodriguez Diaz*, 53 F.4th at 1207 (assuming without deciding that *Mathews* applies to a noncitizen's challenge to detention under § 1226(a)).

[14] *Mathews*, 424 U.S. at 335 (cleaned up).

[15] *Rodriguez Diaz*, 53 F.4th at 1207 (cleaned up).

Circuit precedent, that is not considered "prolonged."[16] And when evaluating Pulido-Bernal's interests under the first prong, the court "cannot simply count his months of detention and leave it at that."[17] It must also consider "the process he received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order."[18]

Pulido-Bernal was given the opportunity to contest his detention before an IJ who considered his length of residence and family ties in the United States, his employment, and the frequency and seriousness of his criminal history.[19] He also appealed the IJ's decision to the Board of Immigration Appeals (BIA).[20] Because duration of detention alone cannot justify relief and here, Pulido-Bernal has not been detained for six months and the record does not show any procedural deficiencies during his bond hearing, I find that the first *Matthews* factor does not weigh in favor of relief.

***2. Pulido-Bernal has received the process he is due.***

The second *Mathews* factor considers whether the IJ deprived petitioner of his interests through deficient process and whether additional process would restore his liberty interest.[21] Pulido-Bernal received a hearing before an IJ. He does not contend that he wasn't given the option of representation or the opportunity to present evidence in his favor—indeed, the IJ

[16] *Id.* (citing *Diouf v. Napolitano*, 634 F.3d 1081, 1091 (9th Cir. 2011) (considering six months of continuing detention "prolonged")).

[17] *Id.* at 1208.

[18] *Id.*

[19] ECF No. 6-1 at 12.

[20] ECF No. 6 at 1.

[21] *Mathews*, 424 U.S. at 335.

discussed his 23 years in the United States, children, and employment as a landscaper.[22] He also appealed his custody determination to the BIA.[23] He contends only that the hearing violated his due-process rights because the government should have the burden to establish dangerousness or risk of flight by clear-and-convincing evidence and the IJ should not be permitted to consider pending charges or misdemeanors in her bond determination.[24]

In *Rodriguez Diaz v. Garland*, a Ninth Circuit panel considered whether the government should bear the burden in custody-redetermination hearings after acknowledging that the noncitizen normally bears the burden to show by a preponderance of the evidence that he is not a "threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk" to justify his release.[25] The panel rejected the petitioner's argument that the burden must be placed on the government to show by clear and convincing evidence that the noncitizen is dangerous or a flight risk to comport with due process.[26] It acknowledged some of the reasons other courts have held that such a burden shift is necessary—i.e., placing the burden on noncitizens risks erroneous deprivation because they "face tremendous language and cultural barriers, have difficulty obtaining evidence, and often lack financial resources to hire an attorney"—but concluded that those barriers "bear no relation to the facts of this case" because Rodriguez Diaz had an attorney, was able to present evidence, and spoke English.[27]

---

[22] ECF No. 6-1 at 12.

[23] ECF No. 6 at 1.

[24] ECF No. 1 at 12.

[25] *Rodriguez Diaz*, 53 F.4th at 1197 (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)).

[26] *Id.* at 1211–12.

[27] *Id.*

Pulido-Bernal offers no facts that would support a burden shift in his proceedings. He does not suggest that he was unable to collect evidence on his behalf, retain an attorney, or communicate with the immigration court. He received a custody-redetermination hearing less than a month after he was initially detained, and he has not shown that he was unable to communicate or present evidence at that hearing. Because Pulido-Bernal did not distinguish his hearing from the one in *Rodriguez Diaz*, I find that the IJ properly placed the burden on him to show that he "is not a danger to the community."[28]

Without relying on any case law, Pulido-Bernal asks this court to enjoin the government from considering criminal charges and misdemeanors in its dangerousness finding.[29] In *Matter of Guerra*, the BIA identified nine factors that an IJ may weigh when making a custody determination.[30] These factors include whether the petitioner has a fixed address, the length of his residence in the United States, his family ties, employment history, record of court appearance, criminal record and seriousness of offenses, history of immigration violations, attempts to flee authorities, and manner of entry to the United States.[31] If proper procedural protections are in place, an IJ has "broad discretion to weigh the listed [*Guerra*] factors and add any factors not mentioned or discount those that are less probative."[32]

BIA precedent permits IJs to consider a detainee's entire criminal history when determining bond, with some limits. If an IJ relies on arrests or charges to support a

---

[28] *See* ECF No. 1-3.

[29] ECF No. 1 at 12.

[30] *Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024) (citing *Guerra*, 24 I. & N. Dec. at 40).

[31] *Id.*

[32] *Id.* (citing *Guerra*, 24 I. & N. Dec. at 40).

dangerousness finding, there must be probative and specific evidence supporting the charge.[33] Pulido-Bernal's Form I-213 includes a lengthy criminal history, and he doesn't dispute that he has a pending domestic-violence case. The IJ thus did not erroneously decide that he poses a danger to the community. Pulido-Bernal also doesn't argue that the IJ failed to consider the other *Guerra* factors and, based on her reasoning, I find that she soundly concluded that Pulido-Bernal's dangerousness outweighed his mitigating factors.[34] So I find that Pulido-Bernal has not shown the risk of an erroneous deprivation of his liberty interest based on the procedures used.

***3. The government's interests weigh against relief.***

The third and final factor also weighs against Pulido-Bernal. It is undisputed that the government has a strong interest in enforcing immigration law, protecting the public from "dangerous criminal" noncitizens, and securing the removal of noncitizens who are subject to final orders of removal.[35] If a detainee appeals an adverse removal decision, like Pulido-Bernal has done here, the government's interest increases because of the risk that he will not appear for removal if the appellate courts affirm the IJ's ruling.[36] Courts are instructed to "heavily weigh" the government's interest in continued detention and effectuating final removal.[37] Because Pulido-Bernal has appealed the IJ's removal decision and received proper procedural protections during his custody-redetermination hearing, the government's interests in this case are

---

[33] *Barrientos v. ICE Field Office Director*, 667 Fed. App'x 184, 184 (9th Cir. 2016) (citing *Guerra*, 24 I. & N. Dec. at 40).

[34] ECF No. 6-1 at 11–12.

[35] *Rodriguez Diaz*, 53 F.4th at 1208.

[36] *Id.* ("The longer detention lasts and the longer the challenges to an IJ's order of removal take, the more resources the government devotes to securing a[] [noncitizen's] ultimate removal. The risk of a detainee absconding also inevitably escalates as the time for removal becomes more imminent.").

[37] *Id.*

significant. And because he is not entitled to relief on the merits of his habeas petition, I do not address the parties' exhaustion arguments.[38] I thus deny Pulido-Bernal's petition for habeas relief.

## Conclusion

IT IS THEREFORE ORDERED that petitioner Salvador Pulido-Bernal's petition for a writ of habeas corpus **[ECF No. 1] is DENIED**.

**The Clerk of Court is directed to CLOSE THIS CASE.**

U.S. District Judge Jennifer A. Dorsey
October 8, 2026

[38] *See Flournoy v. Small*, 681 F.3d 1000, 1004 n.1 (9th Cir. 2012) ("While we ordinarily resolve the issue of procedural bar prior to any consideration of the merits on habeas review, we are not required to do so when a petition clearly fails on the merits."); *Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002) ("[C]ourts are empowered to, and in some cases should, reach the merits of habeas petitions if they are . . . clearly not meritorious despite an asserted procedural bar.").